The last case before us this morning is Cumani v. Queen, 24-8072. Establishment of the Deputy Chief Judge. When reasonable people can reach different conclusions from conflicting evidence about reasonable suspicion and probable cause, there are questions of fact that only a jury can decide. That is what this court said in applying its Bruner case in the Romero case, where reasonable detention was the issue. And with that as the predicate, looking de novo at the record in this case, reasonable jurors could certainly conclude that when an outfitter called a game warden to properly report an accidental wrong sex single elk shooting, that the game warden, quote, went nuts on the phone, and to use the outfitter's words and not mine, started screaming and hollering and without knowing any more than that, said, quote, you have wounded a whole bunch of elk, and quote, somebody was going to have to pay for it, and it's going to be those Albanians who turned out to be Dr. Kamani and Mr. Sheu. Let me focus you on the claim of malicious prosecution. Can we first agree that we're looking at it under the Fourth Amendment? No. We cannot, okay? If you want a Fourteenth Amendment claim, you've got to show that there isn't another remedy, and Wyoming has a malicious prosecution claim, so why aren't you precluded from relying on the Fourteenth Amendment here? The Fourteenth Amendment issue was presented to the Wyoming trial court, and it was rejected. Well, that doesn't mean you didn't have a remedy. It just means you weren't successful. The court ruled that there was no Fourteenth Amendment claim. The trial court in state court in Wyoming ruled that there was no malicious prosecution claim available. Is that in our record here? I believe it is. Looking at your Fourth Amendment malicious prosecution claim, would you agree that that requires that there be a seizure after the institution of legal process? No. I don't agree that it's a Fourth Amendment claim, and I don't agree that seizure is required after initiation of process, and I don't believe that the Pollack case stands for that proposition. The Pollack case was decided simply as a matter of a lack of probable cause. And so, from this record… Well, this court has held in Myers and Sanchez that that's required, haven't we? I think not, and I think also that the Thompson case from the United States Supreme Court, the best analysis I've found of it is from Justice Alito. But he's dissenting. He's discussing an issue that is really not even a part of the court's decision. But he's making a very clear analytical point that you can't conflate false imprisonment and malicious prosecution. The Fourth Amendment protects against unreasonable seizures. A malicious prosecution case protects against an injury to character reputation. That's his point. And so seizure is not a part of and not an element of a malicious prosecution case. Other than the dissent in Thompson, what's your best case for that you don't have to show seizure after the initiation of legal proceedings to advance a Fourth Amendment malicious prosecution claim? Judge McHugh, I think you're asking me to demonstrate a negative. I think the Pollitt case, which I believe to be the most recent case, simply does not stand for that proposition. But it doesn't say it's not required. The case does not say that you do not have to prove that something didn't occur. I think the crux of this case is that from this record, a reasonable person, a reasonable juror, could conclude that when the screaming started and the accusations about Albanians having to pay for a whole bunch of wounded elk were made, the game warden was literally 100 miles away from the hunt and had seen nothing and knew nothing about what had happened. From this record, a reasonable juror could conclude that when the game warden was making these accusations, he had zero information about who Dr. Kamani was and who Mr. Shehu was, other than that they were this outfitter's hunters. He had zero information about what they had done or had not done that day. From this record, a juror could conclude that the game warden was making these accusations because he had personal animosity toward the outfitter. Is his subjective intent relevant to the question of whether there's either reasonable suspicion or probable cause? I think not. I think the standard is reasonably objective information. Right. So we don't care what his motive was, right? We care what his motive was to the extent it undermines his argument that he has reasonably objective information from any reasonably trustworthy source. It undercuts the contention that there was reasonable suspicion. And a reasonable juror could reach this conclusion because immediately before getting the outfitter's call, the game warden had gotten another call from someone who was two miles away, who had no line of sight to the things that were happening. And he said two things. He said, number one, I heard some shots. And number two, at some unspecified time later, he saw two wounded elk separated from a herd. The record also reflects that the same caller denies having any personal knowledge that either Dr. Kamani or Mr. Shehu wounded a whole bunch of elk. And the record is that this other caller denies that he told the game warden that these hunters had wounded a whole bunch of elk. So the record in this case is that the game warden knew nearly nothing when he got the outfitter's call. And seconds later, literally, he starts screaming and accusing these hunters of committing game violation. So it seems to me that what you're arguing is that there was not even reasonable suspicion to support the detention here. Is that your position? The point is that at the moment at which this game warden developed his suspicion, he knew nothing. Okay, so the answer to my question is yes. Okay, and this is a question that kind of concerns more appellate procedure. The appellee says that in your briefing, you don't grapple with the district court's conclusion that there was reasonable suspicion, and instead focus only on the district court's conclusion about probable cause. Can you respond to whether that's a problem for you? Particularly if the district court gave a couple of reasons, reasonable suspicion or probable cause, if we agree that there was reasonable suspicion and you haven't addressed that on appeal, what are we to do? Number one, I disagree that we have not addressed it. It's specifically addressed in the reply brief in response to the claim that the issue was not raised. Number two, reasonable suspicion goes only to detention, and even if there were no wrongful detention claim, with which I disagree because of number one, there is nonetheless still an unlawful prosecution claim, a malicious prosecution claim, because that is dependent upon reasonable probable cause. Are you claiming that it was an arrest as opposed to a detention here? Short answer, no. Longer answer, the detention occurred because of the show of authority of the game warden in directing that Dr. Kamani and Mr. Shehu not leave the area until he had had an opportunity to talk to them again. Okay, so it's a detention. It's a detention, yes. So it needs reasonable suspicion. Let me just close by saying that I think that this record would permit reasonable jurors to conclude that everything that the game warden did, after making his initial accusations, which were formulated before he even got any information from the outfitter, when he has 15 minutes of information from an unreliable source who admits to not being an eyewitness and who denies having told the game warden what he, what the game warden says that he told him, those, everything that the game warden did was not about, after that, was not about conducting an objectively reasonable investigation. It was not about determining reasonable probable cause based upon reasonable trustworthy sources. It was not developed by a prudent and cautious and trained officer, which are the legal standards that apply to him. What reasonable jurors could conclude is that the, all of this was an effort to pin criminal charges based upon some longstanding anger at the outfitter, because that's what he had already decided to do before the outfitter even called him. And that would amount to a lack of reasonable suspicion and a lack of probable cause. Happy to answer any other questions the court may have. Thank you very much. Thank you. May it please the court, counsel. My name is Sam Williams and I represent the appellee in this matter, Chris Queen. So this case involves two claims that have fundamental flaws, which is a lack of evidence to support elements in both. Well, will you start please with malicious prosecution. I thought we had a problem there because you have the Wyoming ability to pursue a claim in Wyoming. Is that under, I'm sorry, under a 14th Amendment version? Sure. Let me be clear.  Yes, there is. There is a claim under the 14th Amendment in Wyoming. It's subject to statute of limitations, which I believe is what occurred in this case. Okay. So there is a claim, but it was not timely filed. Yeah. And I can't say for certain if that particular fact made it into this record. I know the district court's order discusses the availability and that it was there. But I don't know if that fact is particularly established in terms of the statute of limitations. So we do have that basis. So because of that, we're dealing with the Fourth Amendment here. And it's pretty clear from the majority opinion in Thompson that there needs to be a seizure. And the timing of that seizure has to be after the initiation of the criminal proceedings. And we just simply don't have anything in the record that supports that. In addition to the United States Supreme Court, this court is, in addition to the cases already mentioned by this court, and Matt and Nylander has also found that requirement. So that element's missing in this case. And therefore, the summary judgment was appropriate. And the seizure has to be after legal proceedings have begun. Is that... That's correct, Your Honor, yes. And so here, there was the initial detention, and then there was no... They weren't arrested prior to trial or anything? That's my understanding. There's nothing in the record that indicates they were. But even filing an information and issuing a criminal summons isn't enough to trigger that seizure requirement. Does it require confinement? I would say yes, Your Honor. And we don't have any record that the appellants were arrested and put in confinement at any point, including on the day of the investigation, which... If there's no further questions on the malicious prosecution, I'll turn to that claim. So the claim that was pursued was a false arrest claim. And so a required element of that is an arrest. So I think one of the starting points for this court's analysis is going to be what kind of interaction was this. And the record shows that it wasn't an arrest. So I think that can be dispositive. But even if it's not, we can get into the issue of qualified immunity on that claim. So when looking at whether this was an arrest or detention, this court looks at the force and the length of time. In terms of force here, we really don't have any of the indicators that this court has looked to in case law to show that this was an arrest. Mr. Queen was not armed, is that right? I believe he was armed, but he never brandished a weapon during the interaction when he initially made it to the corrals. He inspected their weapons. He had some questions about the illegal, wrong sex-taking and the other elk and then directed them to go back to the outfitter's cabin to wait while he tried to track down the elk that he believed that the group had wounded. And they were there for a very long time, right? Seven to nine hours? Yeah, I believe my math was nine hours. So around then, depending on when you want to say that encounter started or I guess the detention started. Is that long enough to convert it to an arrest? Well, Your Honor, this court doesn't do a math problem when trying to figure out whether a length amounts to an arrest. The United States Supreme Court has said 16 hours is still a detention. So what we're really looking at is the context of the length, the purpose of the detention, as well as what's reasonably necessary to complete the investigation that instigated the detention. So just saying nine hours doesn't get you there. You have to look at what needed to be done here. And, you know, this isn't a traffic stop, obviously. This is an investigation in the backwoods with evidence that can move miles at a time, even when injured. And so, you know, based on that, really what we're looking at is the length to determine whether or not this was an arrest or a detention. I think the record reflects that this was a detention because Queen pursued all the avenues he needed to to confirm whether or not these animals had been shot. And then he had to obviously dispatch and then pack out that meat in accordance with Wyoming regulations. So that's a unique aspect of this case, but it is part of the investigation, not something that he could avoid doing to shorten that length of detention. Assuming it's an investigatory detention, was there enough for reasonable suspicion here? Absolutely, Your Honor. So the sequence of events is, Queen got a call initially about the wrong sex taking. After that, he received a call from Brian Peters on an adjoining piece of land that the Nature Conservancy owns that said he heard a bunch of shots and he saw elk leave a valley. Two of them were wounded. And that there was another hunter in the area, Heath Worstel. Queen, on his way to the corrals, also got a hold of Mr. Worstel. And Mr. Worstel was up there with his wife and son who had tags. He said that they hadn't shot anything that day. And he also learned that Worstel had seen the two dot guys, as he referred to them, shooting. And Queen knew that to be the outfit led by Richmond and Viles. So at that point, he had the information that the Viles group was the only group shooting in the area at the time. And then we have a herd of elk leaving right after a bunch of shots with two being wounded. So I think that alone is enough. What about the fact that he didn't have specific information targeting Mr. Kumani or Mr., is it Shehu? I believe it's Shehu. It might be. My opposing counsels would know better than me. But I still think even if we weren't going to start talking about qualified immunity, if we were just talking about regular reasonable suspicion, it's enough to say that there was articulable facts that Shehu and Kumani shot at this time because they admitted to doing so, essentially. And Queen followed up with more information. He got the tags that they had, and these elk would have put them over their tag limit. He got the information that they had shot into the group and that the other hunter had only shot at one and killed one. But taking that aside, I think when we get into the qualified immunity realm, the fact that we don't have a witness that says, I saw these two people shoot these two particular elk, I don't think is fatal to summary judgment in this matter. I point to Callahan, even though that deals with probable cause, I think the logic kind of makes sense here because we have a lower standard. And if we have a group of folks that are accused of committing crimes, then it's enough for probable cause to get qualified immunity in those circumstances. I think it surely applies in a reasonable suspicion context. So if this court finds that there was an arrest based on the length of the detention, I think that information that I just went through is enough for probable cause, especially in light of Callahan as well. And yeah, also fatal to that, I think, is the fact that the appellants haven't pointed this court to any clearly established law that fits these facts. It's not Apley's job to provide that to this court, but I will say that I wasn't able to find any myself. But the fact that the appellants haven't in this case also means that qualified immunity covers these actions here. So if there are no further questions. No, thank you very much. Thank you. And I think you've got about 22, 23 seconds. Point one, the suspicion was formed after the initial call from Peters and immediately thereafter, accusations that somebody was going to pay and it's going to be the Albanians was made. That's when the suspicion was formed. And last, even to this day, the game warden was still not able to determine whether it was Dr. Kumani or Mr. Shihu who shot which of the elf that both were charged with, indicating that he never reached any reasonable conclusion about what the evidence was telling him. Thank you. Thank you. We will take this matter under advisement and the court is in recess until tomorrow morning.